Hopkins v. Coplan, et al.               CV-04-030-SM  03/16/05
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Kenneth Hopkins,
      Plaintiff

      v.                                  Civil No. 04-30-SM
                                          Opinion No. 2005 DNH 038
Jane Coplan; Philip Stanley;
Viola Lunderville; Marilee Nihan; and
Correctional Officers Turcotte, Edsall,
Tibeault, Desmond, and LaFlamme,
      Defendants,


                         **O R D E R**


      Kenneth Hopkins, an inmate at the New Hampshire State Prison

("NHSP"), brings this action against various correctional

officers and prison administrators, seeking damages for alleged

violations of his constitutionally protected rights.  He claims

that because he once assisted prison administrative authorities

in their investigation into corrupt corrections officers, he has

been subjected to harassment and retaliatory conduct by other

corrections officers.  According to Hopkins, that harassment

culminated in a brutal assault upon him by three fellow inmates –

an assault Hopkins says was orchestrated by corrections officers.

As a result of that attack, Hopkins suffered severe injuries,

including permanent neurological damage.

By prior order, the court adopted, in part, the Report and Recommendation issued by the Magistrate Judge and concluded that Hopkins' complaint sets forth the following viable claims:

1. A section 1983 retaliation claim, as well as state tort claims for assault and battery against defendant Turcotte;

2. Section 1983 claims against defendants Lunderville, Nihan, Coplan, Stanley, LaFlamme, Desmond, and Tibeault, based on failure to take reasonable steps to ensure Hopkins' safety;

3. A section 1983 claim against defendant Edsall based on intentional indifference to a serious medical need.

Defendants move for summary judgment, saying that many of Hopkins' claims are barred by the pertinent statute of limitations and asserting that, as to all claims, he failed to exhaust his administrative remedies. For the reasons set forth below, the court concludes that Hopkins has not exhausted available administrative remedies and, therefore, defendants' motion for summary judgment is necessarily granted, but without prejudice to Hopkins' ability to refile his claims once he has completed the prison's administrative grievance process.

2

## Discussion

42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit relating to the conditions of his or her confinement, even if some or all of the relief the inmate seeks is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must.").

More recently, the Supreme Court expressly held that which was implicit in Booth: that the phrase "with respect to prison conditions," as used in the PLRA's exhaustion provision,

3

incorporates within its scope not just conditions generally affecting the inmate population, but also discrete incidents affecting only a single individual.

> [T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002). Consequently, the PLRA's exhaustion requirement applies when the following three criteria are met: (1) the lawsuit was filed by a "prisoner confined in any jail, prison, or other correctional facility"; (2) he or she filed that lawsuit after the effective date of the PLRA (i.e., April 26, 1996); and (3) the lawsuit is "with respect to prison conditions," as that phrase has been interpreted by the Supreme Court.

Here, the first two conditions are plainly met: Hopkins is an inmate at the New Hampshire State Prison and he filed this action in January of 2004, well after the PLRA's effective date. The only remaining question is whether Hopkins' assertion that defendants violated his constitutionally protected rights - by

4

retaliating against him for having been a confidential informant, by demonstrating deliberate indifference to his serious medical needs, and by failing to take reasonable measures to insure his safety - are complaints "with respect to prison conditions." They are. See Porter v. Nussle, supra.

Accordingly, before Hopkins may pursue his state and federal claims against defendants, he must first exhaust available administrative remedies relating to those claims. Notwithstanding Hopkins' assertion that he has done so, material filed by defendants reveal that he is incorrect. See, e.g., Affidavit of John C. Vinson. While records maintained by the prison reveal that Hopkins did file several inmate requests slips and/or grievances on matters related to the loss or destruction of various items of personal property, those records are devoid of any evidence that he filed request slips or grievances on topics related to the claims at issue in this case (e.g., deliberate indifference to his serious medical needs, indifference to his safety needs, assault, etc.). Although Hopkins might well have informally discussed some of those issues with various corrections officers, the PLRA plainly requires that

5

he do more; he must comply with prison regulations governing inmate grievances and he must exhaust available administrative remedies before pursuing his claims in federal court. He has not yet done so.

Notwithstanding his failure to strictly comply with the exhaustion requirements of the PLRA, Hopkins asserts that he has sufficiently notified prison authorities of the nature of his claims to be deemed to have "substantially" complied with the PLRA's exhaustion requirements. In support of that argument, Hopkins points to the fact that, in the wake of the assault upon him, he was found guilty of having committed a disciplinary infraction - engaging in a fight. Hopkins appealed that finding, pointing out, among other things, that he was the victim of a brutal attack and did not willingly engage in a fight. That written, three-page appeal, says Hopkins, should be viewed as the functional equivalent of his having submitted (and pursued to all available levels of appeal) a grievance.

Such conduct, however, falls measurably short of what is required by the PLRA. The issue in Hopkins' disciplinary hearing

6

was whether he assaulted another inmate.  That Hopkins' defense to the charge involved claims that he was the victim of a brutal assault by other inmates (rather than a willing participant in mutual combat), or claims that he was denied a fair opportunity to present witnesses and evidence at his disciplinary hearing, is largely irrelevant to PLRA compliance with respect to the very different claims at issue in this case.

Even if an inmate's appeal of a disciplinary finding could, under appropriate circumstances, be deemed an adequate substitute for strict compliance with the prison's administrative grievance procedures, it cannot serve as such in this case.  The appeal Hopkins filed (copies of which he says he sent to both the Warden and the Commissioner of the Department of Corrections) does not describe the underlying facts giving rise to the claims he seeks to advance here, nor does it identify by name the defendants to this action.  That appeal deals only with some of the general circumstances surrounding the assault, and it focuses primarily on the alleged procedural deficiencies in the disciplinary hearing that was conducted in the wake of that assault. Moreover, Hopkins' appeal does not even mention his claim that he

7

did not receive prompt and appropriate medical care for the injuries he sustained in that attack.

Perhaps if Hopkins' appeal had set forth in detail the factual background to the claims he seeks to advance in this forum, specifically identifying the relevant parties and their allegedly wrongful conduct, the court might treat that appeal as the functional equivalent of an exhausted grievance (since Hopkins says he provided copies to corrections officers, the warden, and the commissioner). Under those circumstances, one might well be justified in excusing Hopkins from strictly complying with the prison's grievance procedures. See, e.g., Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (holding that an inmate might satisfy the PLRA's exhaustion requirements by raising his claims in the context of an appeal of a disciplinary proceeding, but concluding that, "[i]n order to exhaust, . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."). After all, under those circumstances, one might reasonably conclude that all relevant prison authorities were aware of Hopkins' core claims, considered

8

them, and rejected them. If that were the case, requiring Hopkins' to restate the same claims to the same parties would seem pointless.

But, those are not the facts presented in this case. Here, the court cannot conclude that Hopkins has, de facto, complied with the prison's administrative grievance process. Nor can the court conclude that it would be futile for Hopkins to exhaust available administrative remedies, or (at least on the record as it presently stands) that there are any "special circumstances" which would justify Hopkins' failure to exhaust. See, e.g., Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004) (discussing situations in which "special circumstances" might excuse an inmate's failure to exhaust, or estop defendants from asserting the exhaustion defense).

## Conclusion

If the allegations in Hopkins' complaint are true, then he has ample reason to complain. Nevertheless, the Prison Litigation Reform Act, as interpreted by the United States Supreme Court, provides that he must avail himself of (and

exhaust) available prison administrative remedies <u>before</u> he may bring his claims in federal court. Alternatively, there is precedent (albeit from another circuit) suggesting that he might show that complying with the PLRA's exhaustion requirement would be futile, that he has already done the functional equivalent of exhaust available administrative remedies, that special circumstances exist to justify his failure to exhaust, or that defendants are estopped to assert his lack of exhaustion as an affirmative defense. <u>See generally</u> <u>Hemphill v. New York</u>, 380 F.3d 680, 686 (2d Cir. 2004 (collecting cases). In response to defendants' motion for summary judgment, however, he failed to carry that burden.

For the foregoing reasons, the court holds that Hopkins has failed to comply with the exhaustion requirements of the PLRA. Accordingly, defendants' motion for summary judgment (document no. 38) is necessarily granted, but without prejudice to refiling after Hopkins has exhausted all available prison administrative remedies.

10

Parenthetically, the court notes that should prison officials reject Hopkins' subsequent efforts to exhaust, on grounds that they are time-barred, and if Hopkins then refiles this civil action, the parties should be prepared to address the circumstances under which an inmate's failure to file a timely grievance precludes a subsequent civil suit, as well as the appropriate legal standard the court must apply in determining whether the failure to exhaust might properly be excused. See generally Giano, 380 F.3d at 676-77 (discussing the various approaches adopted by different circuit courts of appeals).

The Clerk of Court shall enter judgment in favor of defendants and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 16, 2005

cc:  Mary E. Schwarzer, Esq.
     Michael J. Sheehan, Esq.

11